IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIDAS INTERNATIONAL, LLC f/k/a<br>MIDAS INTERNATIONAL CORPORATION<br><br>**Plaintiff,**<br><br>v.<br><br>R & H MUFFLER CO. and JAMES A.<br>HILLMAN,<br><br>**Defendants.** | Case No.    1:25-cv-4488 |

## COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND OTHER RELIEF

Plaintiff Midas International, LLC, formerly known as Midas International Corporation ("Midas International"), by its attorneys, for its Complaint for Preliminary and Permanent Injunctive Relief, Damages, and Other Relief ("Complaint") against Defendants, R & H Muffler Co. ("R & H") and James A. Hillman ("Mr. Hillman"), states as follows:

### Nature of the Action

1.     This is an action for trademark infringement under the trademark laws of the United States, for unfair competition, and for breach of contract. Midas International seeks, among other things, a preliminary and permanent injunction (i) enjoining wrongful and unlawful use of Midas International's federally registered trademarks, trade name, indicia and other intellectual property, (ii) enforcing the post-termination obligations set forth in the parties' franchise agreement, including, without limitation, Defendants' post-termination obligation to abide by the franchise agreement's covenant not to compete, to cease using and to transfer and assign to Midas International the telephone numbers used in connection with the operation of their former franchised Midas shop. Midas International also seeks damages, including contractual liquidated damages, for Defendants' infringing and other wrongful conduct and the

1

attorneys' fees and costs they have incurred and will incur in prosecuting this action, as provided by statute and the parties' written franchise agreement.

## Parties

2.     Midas International is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Palm Beach Gardens, Florida.[1] Midas International and its affiliates are engaged in the business of operating, and granting franchises to qualified persons to operate, automotive specialty shops (known as "Midas Shops"), which engage in the sale and installation of certain automotive products and the performance of certain related services. Midas International is the owner of, among other things, the trade name "Midas."

3.     R & H was organized as a corporation under the laws of the State of Illinois, with its principal place of business in Illinois. R & H is a former Midas franchisee, which operated a franchised Midas Shop at 1802 North Larkin Avenue, Crest Hill, Illinois 60403, which is near the larger city of Joliet, Illinois (the "Joliet Midas Shop"). As discussed in more detail below, even though it is no longer a Midas franchisee, R & H wrongfully continues to hold itself out as if it were still a franchisee licensed to use Midas International's trademarks and other intellectual property.

4.     Upon information and belief, Mr. Hillman is an Illinois resident and R & H's President and guarantor.

## Jurisdiction and Venue

5.     This action arises under the Lanham Act, 15 U.S.C. § 1051, *et seq.,* and under the common law.

6.     This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other

---

[1] Midas International was formerly known as Midas International Corporation, a Delaware corporation, which converted to a limited liability company on or about June 27, 2019.

2

claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

7.     Venue is proper in this Court under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## The Midas System

8.     Based on years of experience, Midas International has developed and operates, and is the sole and exclusive owner of, a stringent system (the "Midas System") in the United States. The Midas System is a comprehensive system for the development, operation, and maintenance of Midas Shops and is designed to ensure that Midas Shops and the services and products offered in them meet uniform, high quality standards. The Midas System is also designed to protect Midas International's name and reputation. As such, all Midas International franchise contracts require franchisees to comply with the Midas System in the operation of their Midas Shops. Midas franchisees must also pay royalties and other amounts to Midas International in exchange for the rights granted under their franchise agreements.

9.     The Midas System is widely known and favorably recognized by consumers. Consumers choose Midas because of its high reputation for, *inter alia,* quality, service, products, and warranties. To protect the Midas System and the goodwill associated with the Midas System, Midas International requires its franchisees to adhere to its policies and procedures.

10.     The Midas System includes proprietary rights in certain valuable trade names, service marks and trademarks including, *inter alia,* the trade names "Midas" and "The Midas Touch" and related logos and trade dress (the "Proprietary Marks"). The Proprietary Marks include, but are not limited to, the following:

| MARK | REG. NO. | REGISTERED |
|---|---|---|
| MIDAS | 655,353 | 12/03/1957 |
| MIDAS MUFFLER SHOPS IN OVAL AND ARROW | 726,350 | 01/09/1962 |
| MIDAS BRAKE SHOPS IN OVAL | 749,922 | 05/21/1963 |
| MIDAS BRAKE SHOPS OVAL AND ARROW DESIGN | 753,876 | 07/30/1963 |
| OVAL & ARROW | 798,254 | 10/26/1965 |
| MIDAS MUFFLER SHOPS IN OVAL AND ARROW | 803,611 | 02/08/1966 |

| MARK | REG. NO. | REGISTERED |
|------|----------|------------|
| MIDAS IN OVAL | 803,612 | 02/08/1966 |
| MIDAS MUFFLER SHOPS | 803,613 | 02/08/1966 |
| MIDAS | 803,614 | 02/08/1966 |
| MIDAS | 847,771 | 04/16/1968 |
| MIDASIZE | 1,090,479 | 05/02/1978 |
| MIDAS IN OVAL | 1,119,987 | 06/12/1979 |
| MIDAS MATTERS | 1,196,225 | 05/25/1982 |
| MIDAS | 1,238,734 | 05/17/1983 |
| MIDAS IN OVAL | 1,247,295 | 08/02/1983 |
| THE MIDAS TOUCH | 1,258,822 | 11/22/1983 |
| MIDAS AUDO SYSTEMS EXPERTS | 2,168,822 | 06/30/1998 |
| MIDAS LOGO | 2,465,462 | 07/03/2001 |
| MIDAS (STYLIZED) | 2,465,463 | 07/03/2001 |
| MIDAS and Oval Design | 2,611,406 | 08/27/2002 |
| TRUST THE MIDAS TOUCH | 3,108,815 | 06/27/2006 |
| MIDAS TOUCH | 3,158,702 | 10/17/2006 |
| OVAL & ARROW | 3,183,220 | 12/12/2006 |
| CONFIA EN LOS QUE SABEN. MECANICOS MIDAS | 3,397,494 | 03/18/2008 |
| FOR MECHANICS KNOWN FOR THEIR WORK AND THEIR WORD, TRUST THE MIDAS TOUCH | 3,397,493 | 03/18/2008 |
| MIDAS SECURE STOP | 3,522,332 | 10/21/2008 |
| SECURE STOP | 3,522,333 | 10/21/2008 |

11.    The Proprietary Marks serve to identify the source, origin and sponsorship of Midas Shops and the products and services they offer, and to distinguish those shops, products and services from those established, made, offered and sold by others.

12.    The Proprietary Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registrations of the Proprietary Marks, and all other registrations for trademarks or service marks which are part of the Midas System, have been in full force and effect since their registration and continue in full force and effect, and all those eligible are incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. Each registration set forth above is prima facie evidence of the validity of the registration of the Proprietary Marks, of Midas International's ownership of those marks, and of Midas International's exclusive right to use those marks in commerce on the services and goods listed above, as provided in 15 U.S.C. § 1057(b) and § 1115(a).

13.     Midas International has given notice to the public of the registration of the Proprietary Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that Midas International remains the exclusive user of the Proprietary Marks in the United States.

14.     Midas International or its predecessors have continuously used the Proprietary Marks in interstate commerce in connection with the promotion, operation and franchising of Midas Shops and the promotion and sale of the products and services they offer throughout the United States, including the State of Illinois.

15.     Midas International has the exclusive right to use and license the Proprietary Marks and derivations thereof, as well as the distinctive Midas System with which franchisees offer Midas products and services to the public under the Proprietary Marks in the United States.

16.     Pursuant to written franchise agreements entered into by and between Midas International and its authorized and approved franchisees, Midas International grants franchises to qualified persons to license and operate Midas Shops using the Midas System in the United States.

17.     Midas International and its authorized franchisees have extensively advertised and promoted Midas Shops and the products and services they offer under the Proprietary Marks throughout the United States and through various media. As a result of such efforts and the enormous amount of money spent in connection therewith, the products and services offered by Midas International and its franchisees under the Proprietary Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

**<u>The Parties' Written Midas Franchise Agreement</u>**

18.     In 1993, R & H became a Midas franchisee and entered into a Franchise and Trademark Agreement with Midas International that had a 20-year term. On or about January 31, 2013, when the initial agreement expired, R & H renewed the parties' relationship by entering

into another written Franchise and Trademark Agreement with Midas International (the "Franchise Agreement"), which also had a stated 20-year term.

19.     Under the Franchise Agreement, Midas International granted R & H a franchise license to use the Midas System in connection with its operation of the Joliet Midas Shop. A true and correct copy of the Franchise Agreement is attached hereto as Exhibit A.

20.     Mr. Hillman, among other things, personally guaranteed certain of R & H's obligations under the Franchise Agreement by signing the Franchise Agreement in his individual capacity and further guaranteed R & H's obligations by signing a separate personal guaranty (the "Personal Guaranty"), a true and correct copy of which is attached hereto as Exhibit B.

21.     Under Article 4.1(a) of the Franchise Agreement, R & H agreed to pay Midas International, within ten (10) days of the close of each calendar month, certain royalty fees equal to a percentage of the net revenue it derived from the operation of the Joliet Midas Shop.

22.     R & H also agreed that interest would accrue on any unpaid indebtedness to Midas International. (Franchise Agreement ¶ 6.11.)

23.     Defendants acknowledged in the Franchise Agreement that Midas International is the sole owner of all proprietary rights in and to the Midas System and each and every part thereof and all material and information revealed to Defendants under the Franchise Agreement relating to the Midas System. (Franchise Agreement ¶ 2.4.)

24.     In that regard, Defendants specifically acknowledged in the Franchise Agreement that Midas International was the sole owner of the Proprietary Marks, Midas indicia and the Midas System, and that Defendants "shall use the Proprietary Marks only for so long as the right, franchise, and license granted herein remains in force, and only in connection with the sale and installation of genuine Midas products." (Franchise Agreement ¶¶ 2.1, 2.3.)

25.     It is a material breach, and grounds for termination of the Franchise Agreement, if, among other reasons, R & H fails to make "any payment of money owed to Midas when due, or fails to submit to Midas when due any report required by Section 4.2 or 6.10" of the Franchise

Agreement, and "such default is not totally cured within thirty days after Midas gives written notice of such default." (Franchise Agreement ¶ 8.2(a).)

26.    Defendants agreed that, if termination occurred, they would be required, *inter alia,* to promptly pay to Midas International all liquidated or ascertainable sums owing to Midas International and immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas International the telephone numbers listed or advertised by Defendants in connection with the Joliet Midas Shop before termination. (Franchise Agreement ¶8.7.)

27.    Defendants also acknowledged that, upon termination, they would be required to (i) immediately discontinue the use of any of the Proprietary Marks, any other Midas indicia or the Midas System, or any other materials which may in any way indicate or tend to indicate that they are or were an authorized Midas International franchisee or is or was in any way associated with Midas International; (ii) immediately remove all signs containing any of the Proprietary Marks or other Midas indicia; (iii) promptly destroy or surrender to Midas International all stationary, letterheads, forms, printed matter, promotional displays, and advertising containing any of the Proprietary Marks, and (iv) immediately discontinue all advertising placed as an authorized Midas International franchisee or which contains or makes reference to any of the Proprietary Marks. (Franchise Agreement ¶ 8.7.)

28.    Defendants further agreed that, upon termination, they would owe liquidated damages of $100 per day that they remained in breach of their post-termination obligations (Franchise Agreement ¶ 8.6.) Defendants also expressly acknowledged that Midas reserved "the right to recover such other or additional damages as may be provided by law.) (*Id.*)

29.    Defendants also agreed and acknowledged that they would be prohibited for a continuous period of two years after termination from engaging or having "any interest in any business which is the same as or substantially similar to the business" of the Joliet Midas Shop and that they would be bound by the confidentiality restrictions as described in the Franchise Agreement. (Franchise Agreement ¶ 2.4.)

## Defendants' Breaches of Their Obligations Under the Franchise Agreement

30.     Defendants failed to comply with their obligations under the Franchise Agreement.

31.     More specifically, Defendants failed timely to pay to Midas International the royalties due and owing to Midas International.

32.     This was not Defendants' first time failing timely to pay amounts due and owing to Midas International. To the contrary, Defendants had repeatedly shown a cavalier attitude towards their payment obligations, requiring Midas International's accounts receivable staff to spend a disproportionate amount of time dealing with Defendants and their accounts, including attending to insufficient funds notices from Defendants' bank when payments bounced, accommodating Defendants' requests to draft payments after they were due, and entering into payment arrangements with Defendants when they fell behind.

33.     By Notice of Default dated November 26, 2024 (the "Notice of Default"), Midas International advised Defendants that they were in default of their obligations under the Franchise Agreement based on the failures to pay to Midas International the royalties due and owing under the Franchise Agreement. A true and correct copy of the Notice of Default is annexed hereto as Exhibit C.

34.     The Notice of Default advised Defendants that if the default was not cured within thirty (30) days following its receipt of the Notice of Default, the Franchise Agreement would be subject to termination.

35.     Defendants failed timely to cure the default set forth in the Notice of Default, and the cure period, as specified in the Notice of Default, expired without cure. Accordingly, by Notice of Termination dated January 13, 2025 (the "Notice of Termination"), Midas International advised Defendants that the Franchise Agreement was terminated, effective immediately. A true and correct copy of the Notice of Termination is attached hereto as Exhibit D. The Notice of Termination further advised Defendants that they were required to comply with their post-termination obligations under the Franchise Agreement.

**Defendants' Infringement of The Proprietary Marks**

36.     Notwithstanding Franchise Agreement termination, Defendants continue to use the Proprietary Marks and the Midas System in connection with the operation of their former franchised Joliet Midas Shop, to market and promote the Joliet Midas Shop through the use of the Proprietary Marks, to hold the Joliet Midas Shop out to the public as an authorized Midas Shop, and to pass off the Joliet Midas Shop and the unapproved products and services it offers as being authorized by Midas when they are not.

37.     In addition to infringing on Midas International's trademark rights, as discussed in more detail below, Defendants had a history of failing to adhere to the required cleanliness and other standards required of a Midas franchisee, causing further concern about the image projected to consumers in the marketplace if Defendants are permitted to appear to have a continued association with the brand.

38.     Defendants' use of the Proprietary Marks, Midas indicia, and the Midas System is without the license or consent of Midas International and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship.

39.     In addition to the fact that other Midas franchisees and Defendants offer identical products and services at their shops, the products and services provided by Defendants using the Proprietary Marks are offered to the same class of consumers as those who patronize authorized Midas Shops. Upon seeing the familiar Proprietary Marks and other Midas indicia through Defendants' unauthorized use thereof, consumers will be deceived into concluding that Defendants' unauthorized automobile service shop, and the products and services offered and sold in connection with it, are subject to Midas International's supervision, are sponsored or endorsed by Midas International and bear the Proprietary Marks pursuant to Midas International's authority and permission.

40.     So long as Defendants continue to use the Proprietary Marks in connection with the operation of their unauthorized automobile service shop, consumers have no practical way of knowing that it is no longer affiliated with, or sponsored, authorized or endorsed by, Midas

9

International. As a result, any consumer dissatisfaction with Defendants' unauthorized automobile service shop, or with the products and services offered in connection with it will be attributed to Midas International and the entire Midas network.

41.     Defendants' actions further violate their post-termination non-compete obligations under the Franchise Agreement.

42.     Midas International has sent Defendants **two** separate cease & desist letters (the "C & D Letters") – one dated February 26, 2025 and one dated March 14, 2025 –  giving actual notice of their violation and infringement of the Proprietary Marks, and Defendants have actual constructive notice of Midas International's rights in the Proprietary Marks and the registrations thereof pursuant to 15 U.S.C. § 1072.  Defendants' continued infringement is willful, malicious, fraudulent and deliberate.

43.     In addition to their failure to cease all use of the Proprietary Marks, the Midas System, and other Midas indicia, Defendants have also failed and refused to execute the forms necessary to transfer and assign to Midas International the telephone numbers that they listed or advertised before termination. To the contrary, Defendants continue to use the telephone numbers that they previously used at the Joliet Midas Shop in connection with their unauthorized competing business, and even continue to answer the telephone identifying the business as a Midas Shop.

44.     Midas International has at all times complied with and fully performed all of its obligations under the Franchise Agreement.

45.     Article 10.4 of the Franchise Agreement provides that "[i]n the event Midas is required to employ legal counsel or to incur other expense to enforce any obligation of Franchisee hereunder, or to defend against any claim, demand, action, or proceeding by reason of Franchisee's failure to perform any obligation imposed upon Franchisee by this agreement, and provided that legal action is filed by or against Midas and such action or the settlement thereof establishes Franchisee's default hereunder, then Midas shall be entitled to recover from Franchisee the amount of all reasonable attorneys [sic] fees of such counsel and all other

expenses incurred in enforcing such obligation or in defending against such claim, demand, action, or proceeding, whether incurred prior to or in preparation for or contemplation of the filing of such action or thereafter."

## COUNT I

## LANHAM ACT - TRADEMARK INFRINGEMENT

46. Midas International repeats and realleges ¶¶ 1 through 45 of its Complaint as and for this ¶ 46, as if fully set forth herein.

47. Upon termination of the Franchise Agreement, Defendants were obligated to cease using the Proprietary Marks, as well as all other elements of the Midas System and its associated trade names, service marks, and trademarks. In contravention of these obligations, and without Midas International's consent or authorization, Defendants have used, and continue to use, the Proprietary Marks, as well as other elements of the Midas System at their unauthorized automobile service shop.

48. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Proprietary Marks, and Defendants' sale, offering for sale, distribution or advertising of goods and services under the Proprietary Marks, or any marks similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

49. As a direct and proximate result of Defendants' infringement, Midas International has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

50. Midas International has no adequate remedy at law because the Proprietary Marks are unique and represent to the public Midas International's identity, reputation, and goodwill, such that damages alone cannot fully compensate Midas International for Defendants' misconduct.

51. Unless enjoined by the Court, Defendants will continue to use and infringe the Proprietary Marks, to Midas International's irreparable injury. This threat of future injury to

Midas International's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued use of the Proprietary Marks and to ameliorate and mitigate Midas International's injuries.

## COUNT II

## LANHAM ACT - UNFAIR COMPETITION

52. Midas International repeats and realleges ¶¶ 1 through 51 of its Complaint as and for this ¶ 52, as if fully set forth herein.

53. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

54. As a direct and proximate result of Defendants' unfair competition, Midas International has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

55. Midas International has no adequate remedy at law because the Proprietary Marks are unique and represent to the public Midas International's identity, reputation, and goodwill, such that damages alone cannot fully compensate Midas International for Defendants' misconduct.

56. Unless enjoined by the Court, Defendants will continue to compete unfairly with Midas International, to Midas International's irreparable injury. This threat of future injury to Midas International's business identity, goodwill, and reputation requires injunctive relief to prevent Defendants' continued unfair competition and to ameliorate and mitigate Midas International's injuries.

**COUNT III**

**BREACH OF CONTRACT - FRANCHISE AGREEMENT**

57.     Midas International repeats and realleges ¶¶ 1 through 56 of its Complaint as and for this ¶ 57, as if fully set forth herein.

58.     Defendants have failed and refused to perform their post-termination obligations under the Franchise Agreement, including, but not limited to, its obligations to (i) promptly pay all amounts due and owing to Midas International (including $100/day in liquidated damages, which continue to accrue), (ii) immediately and permanently discontinue the use of any of the Proprietary Marks, any of the Midas indicia, or the Midas System, or any other materials which may in any way indicate or tend to indicate that Defendants are or were authorized Midas International franchisees or are or were in any way associated with Midas International (iii) immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas International the telephone numbers they listed or advertised before termination of the Franchise Agreement, and (iv) cease operating a competing business in violation of their contractual post-termination obligation not to compete.

59.     To the contrary, and while they have no contractual right or license to do so, Defendants continue to use Midas International's Proprietary Marks, Midas System, and other Midas indicia in connection with the operation of their unauthorized automobile service shop and also continue to use the telephone numbers they used at their former franchised Joliet Midas Shop in connection with the operation of its unauthorized automobile service shop.

60.     As a direct and proximate result of Defendants' breaches of their post-termination obligations, Midas International has been irreparably injured, including injury to its goodwill and reputation, resulting in lost revenues and profits and diminished goodwill.

61.     In addition to the irreparable injury which Midas International is suffering as a result of Defendants' misconduct and contractual breaches, Midas International has sustained monetary damages as a direct and proximate result of Defendants' failure and refusal to comply with their contractual obligations. These damages include, without limitation, the amounts due

and owing to Midas International under the Franchise Agreement, including liquidated damages, which as of currently total approximately $9,000 and continue to accrue on a daily basis.

## PRAYER FOR RELIEF

WHEREFORE, Midas International respectfully prays for the following relief against Defendants, jointly and severally:

A.     A preliminary and permanent injunction enjoining Defendants, their agents, servants and employees, and those people in active concert or participation with them, from, using the Midas System, Midas indicia, and the Proprietary Marks, or any trademark, service mark, logo or trade name that is confusingly similar to the Proprietary Marks;

B.     A preliminary and permanent injunction ordering Defendants, their agents, servants and employees, and those people in active concert or participation with them, to:

1.     immediately remove or cover all signage and indicia of Midas International, (including but not limited to Midas trade dress), and discontinue all advertising placed as an authorized Midas International franchisee or which contains or makes reference to any of the Proprietary Marks or Plaintiff's indicia;

2.     immediately execute the forms necessary and take such other steps as may be necessary to transfer and assign to Midas International the telephone numbers Defendants listed or advertised for the Joliet Midas Shop before termination;

3.     immediately surrender to Midas International or destroy all stationery, letterheads, forms, printed matter, promotional displays and advertising containing any of the Proprietary Marks or Midas indicia;

4.     immediately and permanently discontinue use, misappropriate, duplication, and/or disclosure of Midas International's trade secrets including without limitation the Midas System;

5.     immediately refrain from doing anything tending to indicate that Defendants are or were authorized Midas International franchisees, or are or were in any way associated with Midas International;

6.     immediately refrain, for a period of two years commencing with the first date of compliance, from either directly or indirectly, for themselves or through, on behalf of or in conjunction with any person, corporation, limited liability company, limited liability partnership, partnership, or other

business association or non-individual legal entity own, maintain, engage in, be employed by, advise, assist, invest in, franchise, make loans to or have any interest in any business which is the same as or substantially similar to the business of their former franchised Midas Shop within 15 miles of the location of their former Midas Shop or within 15 miles of any other Midas Shop.

C.      An Order requiring that Defendants be required to file with the Court and to serve upon Midas International's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

D.      An Order requiring that Defendants account and pay over to Midas International all gains, profits and advantages derived by it as a result of its infringement of the Proprietary Marks, breaches of contract and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and by the controlling principles of common law;

E.      An Order requiring that Defendants pay to Midas International such damages as it has sustained by reason of said trademark infringement, unfair competition and breaches of contract; and that, because of the willful nature of said infringement, the Court enter judgment for Midas Act, 15 U.S.C. § 1117;

F.      An Order requiring that Defendants pay to Midas International such damages as Midas International has sustained by reason of Defendants' breaches of the Franchise Agreement, including, without limitation, That Defendants pay to Midas International all accrued liquidated damages in the amount of $100 per day, calculated beginning from the date of termination;

G.      An award of the costs and expenses, including reasonable attorneys' fees, incurred by Midas International in connection with this action as provided for by statute and the parties' Franchise Agreement;

H.      Pre- and post-judgment interest; and

I.      Such other and further relief as the Court deems just and proper.

April 24, 2025                          MIDAS INTERNATIONAL. LLC

                                        By:      *s/ Keith W. Medansky*

                                        One of its attorneys


Keith W. Medansky (#6195673)
Jacob R. Clubb (#6335706)
DLA PIPER LLP (US)
444 W. Lake Street, Suite 900
Chicago, Illinois 60606
Phone: (312) 368-4000
Facsimile: (312) 236-7516
keith.medansky@us.dlapiper.com
jacob.clubb@us.dlapiper.com

Bethany L. Appleby (pro hac vice forthcoming)
DLA PIPER LLP (US)
33 Arch Street, Suite 2600
Boston, MA 02110
Phone: (617) 406-6048
Facsimile: (617) 406-6148
bethany.appleby@us.dlapiper.com